# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| RANDY LEE BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:18-cv-00065-JAR |
| | ) | |
| MENARD, INC., | ) | |
| *d/b/a Menards*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Menard, Inc., *d/b/a Menards*' Motions for Summary Judgment and to Exclude the Testimony of Plaintiff's Expert Witness Jerry Birnbach. (Docs. 37. 40.) Both motions are fully briefed and ready for disposition.

### Background[1]

On January 23, 2017, Plaintiff was in the Menards store on Oak Grove Road in Poplar Bluff, Missouri. As he was walking through the electrical department, Plaintiff tripped and fell to the ground. To enter the electrical department, patrons must transition from a polished concrete floor to aisles carpeted with AstroTurf. In each aisle, a "transition strip" is laid over the seam between the polished concrete and the carpet. The two-piece transition strip model chosen by Menards consists of an aluminum base screwed to the concrete floor and a rubber insert that connects to the base.

---

[1] Facts are taken from the parties' statements of material fact, responses and supplements thereto. The Court will cite specific filings where appropriate.

The electrical department displays a number of lighting fixtures and ceiling fans suspended from the ceiling of the store. Plaintiff alleges that he was looking up at the lights and fans on display when his foot caught a transition strip that was sticking up higher than it should have been. (Doc. 25.) He alleges that, when he tripped, he reached out instinctively and made contact with several unsecured boxes containing heavy ceiling fans, causing them to fall on his back as he fell to the floor face-first. (*Id*.) Plaintiff alleges that he suffered serious injuries to his back, head, and other areas, including aggravation of his pre-existing multiple sclerosis. (*Id*.) He asserts that he has incurred medical expenses and lost income, deals with ongoing pain, and that he will need future medical treatment, all attributable to Menards' negligence. (*Id*.)

In support of his claim, Plaintiff offers Birnbach's expert report, which concludes that the strip that Plaintiff tripped over was as high as 1.5 inches. Birnbach's conclusions are based on photographs of the transition strip taken by Plaintiff's counsel. Menards asserts that Plaintiff's counsel photographed the wrong aisle and that therefore Birnbach's report must be excluded. (Doc. 38.) As a result, Menards argues that it is entitled to summary judgment because Plaintiff cannot prove that the transition strip was dangerous without expert testimony.

Menards also argues that its expert, William H. Nelson, personally examined the aisle where Plaintiff fell and determined that the actual transition strip on which he tripped complied with the requirements of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213. (Doc. 38.) In addition, Menards argues that Plaintiff cannot recover because any potential trip risk posed by the transition strip was open and obvious. (*Id*.)

**Menards' Motion to Exclude Birnbach's Testimony (Doc. 40)**

Because one of Menards' summary judgment arguments turns on Plaintiff's lack of admissible expert testimony, the Court will first address Menards' motion to exclude Birnbach's testimony.

*Legal Standard*

The federal rules of evidence and related case law require that an expert be qualified and that the expert's testimony be both reliable and relevant. *See* Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). An expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *Kumho Tire Co.*, 526 U.S. at 150-51. Reliability hinges on the sufficiency of the facts or data on which the opinion is based, the dependability of the principles and methods employed, and the proper application of the principles and methods to the facts of the case. Fed. R. Evid. 702. If the opinion is based solely or primarily on experience, the witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts. Fed. R. Evid. 702, Advisory Committee Notes. To be relevant, the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Relevance requires the expert's testimony relate to an issue in the case. *See Daubert*, 509 U.S. at 591. "[D]oubts regarding the usefulness of an expert's testimony" are resolved in favor of admissibility, *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006); *accord Johnson v. Mead Johnson & Co.*, 754 F.3d 557, 562 (8th Cir. 2014), because "[a]n expert's opinion should be excluded only if that opinion is so fundamentally unsupported that it can offer no assistance to the jury, *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (internal quotation marks and citation omitted).

*Discussion*

Menards argues that Birnbach's report is unreliable, irrelevant, and unduly prejudicial. (Doc. 41.) In his report, Birnbach makes four key findings. (*See* Doc. 44-6.) First, he concludes that Menards chose a model of transition strip that does not meet ADA standards. (Doc. 41-2 at 2.) Second, he concludes that the chosen transition strip is not designed to withstand the heavy

foot traffic it would encounter on the floor of a large retailer such as Menards. (*Id.* at 5, Doc. 44-6 at 11.) Third, he concludes that the chosen transition strip made it impossible for the floor-cleaning service to maintain the floor abutting the transition, which left transition strips throughout the lighting department in various states of disrepair. (Doc. 41-2 at 3.) Fourth, he opines that the AstroTurf carpeting Menards chose may have a pile that does not meet ADA standards, which further compromised the safety of the transition strip's installation and maintenance. (*Id.* at 2.) As noted, Birnbach's opinions are based on measurements and manipulations of transition strips found in several of the lighting aisles in the Oak Grove Road Menards store. (Doc. 44-6 (including pictures of multiple AstroTurf-carpeted aisles).)

The crux of Menards' argument is that the photos taken by Plaintiff's counsel—upon which Birnbach relied—depict the wrong aisle. (Doc. 41.) As such, Menards argues that Birnbach's opinion is not based on "sufficient facts or data," relates to the condition of transition strips that are not relevant to Plaintiff's claim, and invites the jury to find for Plaintiff based on the conditions of those other transition strips rather than the actual conditions Plaintiff experienced. (*Id.*)

Menards asserts that a Menards employee took photographs of the relevant aisle shortly after Plaintiff's fall and that those photos show a unique discoloration in the cement floor that allowed their expert to identify the correct location of the fall. (Doc. 41 at 6-7.) Plaintiff responds that the employee likely photographed the wrong aisle and that her incident report describing the fall is too vague to resolve the confusion. (Doc. 44 at 8.) Plaintiff adds that his counsel did not photograph the aisle Menards identifies because, when he went to the site inspection, the store manager assured him that the fall had not occurred in that aisle, further confusing the matter. (*Id.* at 9.) Finally, Plaintiff argues that the condition of other transition strips is relevant to his claim insofar as it demonstrates the flaws in the design of the chosen

4

model, specifically how the height of the rubber insert can change, as well as the efficacy of Menards' cleaning and inspection regimens. (*Id.* at 10-11.)

The Court finds that Birnbach's testimony is based on sufficient facts to be relevant to Plaintiff's claims and helpful to the jury but that some of his findings are not relevant to Plaintiff's claim. The Court believes that an expert's opinion regarding the suitability of the chosen transition strip model—especially regarding the security of the rubber insert and its compliance with the ADA—is related to Plaintiff's legal claim that Menards was negligent in maintaining the safety of its floor, specifically as to whether Menards knew or should have known that the transition strip was unsafe.[2] Moreover, the Court finds that the expertise necessary to identify potential flaws in the chosen model is not within the knowledge or experience of an ordinary lay juror. Accordingly, Birnbach's first and second key findings would be of significant help to the jury.

While the Court agrees with Menards that there is some risk that Birnbach's testimony might be misunderstood by some jurors as conclusive evidence that the transition strip over which Plaintiff tripped was in a dangerous condition when he tripped over it—to the extent Menards is correct that Plaintiff's counsel failed to photograph the correct aisle—the Court is confident that a properly instructed jury will be able to appropriately contextualize Birnbach's conclusions. *See Ridgell v. City of Pine Bluff*, 935 F.3d 633, 636 (8th Cir. 2019) (jurors are presumed to follow instructions). Moreover, Menards' argument that Birnbach is unable to opine as to the specific state of the transition strip in the aisle on the day Plaintiff fell goes to the weight of his opinion, not its admissibility.

---

[2] The Court does not believe the fact that the transition strip was taken from Menards' stock is relevant and will exclude any expert testimony to that effect.

That said, the Court finds that Birnbach's third and fourth key findings are irrelevant to Plaintiff's claim. Put simply, Plaintiff does not allege that his trip was caused by inadequate floor cleaning or the AstroTurf carpeting; he alleges that he tripped over the transition strip. While the third and fourth key findings intersect with the state of the floor in the electrical department, neither assist the jury in determining whether Plaintiff's fall was caused by a defective transition strip. The Court will therefore exclude Birnbach's third and fourth key findings.

Accordingly, the Court will grant in part and deny in part Menards' motion to exclude Birnbach's testimony.

## Menards' Motion for Summary Judgment (Doc. 37)

Menards also moves for summary judgment, arguing that Plaintiff cannot show that his fall was caused by an inherently dangerous transition strip and that, in any event, the risk was open and obvious.

### *Legal Standard*

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). In ruling on a motion for summary judgment, all reasonable inferences must be drawn in a light most favorable to the non-moving party. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The evidence is not weighed and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

Once the moving party demonstrates that there is no genuine issue of material fact, the nonmovant must do more than show there is some doubt as to the facts. *Matsushita Elec.*

*Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party

bears the burden of setting forth affirmative evidence and specific facts by affidavit and other

evidence showing a genuine factual dispute that must be resolved at trial. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "A dispute about a material

fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000)

(quoting *Anderson*, 477 U.S. at 248). On the other hand, judgment as a matter of law is

appropriate only when there is no legally sufficient evidentiary basis on which a reasonable jury

could find for the nonmoving party. Fed. R. Civ. P. 50(a). Because of their fact-intensive

nature, "[s]ummary judgment is often inappropriate in negligence cases." *Lacy v. Wright*, 199

S.W.3d 780, 782-83 (Mo. Ct. App. 2006) (quoting *Bartel v. Central Markets, Inc.*, 896 S.W.2d

746, 748 (Mo. Ct. App. 1995)).

> ### *Discussion*

To recover in a slip-and-fall case against a retail store, a plaintiff must show: "(1) a

dangerous condition existed on Defendant's premises which involved an unreasonable risk; (2)

that Defendant knew or by using ordinary care should have known of the condition; (3) that

Defendant failed to use ordinary care in removing or warning of the danger; and (4) as a result,

Plaintiff was injured." *Rycraw v. White Castle Sys., Inc.*, 28 S.W.3d 495, 499 (Mo. Ct. App.

2000) (citing *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898, 903 (Mo. Ct. App. 1996));

*Christian v. Saint Francis Med. Ctr.*, 536 S.W.3d 356, 358 (Mo. Ct. App. 2017), *reh'g and/or*

*transfer denied* (Jan. 3, 2018).

### a. **Dangerous Condition**

Menards begins by arguing that Plaintiff cannot prove the first element of his negligence claim because he has no evidence of the condition of the actual transition strip over which he allegedly tripped. Relatedly, Menards argues that expert testimony is necessary to explain how or why the conditions of a given transition strip might make it dangerous and that Plaintiff's expert's testimony is inadmissible. Because this Court has already found that Birnbach's testimony is admissible and relevant, it need not address whether the risk posed by the allegedly dangerous condition here—a loose or otherwise defective transition strip—would be readily understood by a lay jury without expert testimony.

As to Menards's argument that Plaintiff has no evidence of the condition of the transition strip at issue on the day he tripped because his counsel never examined the aisle in which he fell, (Doc. 38 at 5), the Court concludes that there is a genuine dispute of material fact as to which aisle Plaintiff was in when he tripped and as to the condition of that transition strip. Menards argues that it identified the appropriate aisle based on the color of the floor in their employee's incident report photos. Plaintiff asserts that the products and layout of the aisle in the employee's photographs did not match his recollection of the aisle. Further confusing the issue is the store manager's statement that the store had been rearranged in the time between the fall and the site inspection and assurances that the fall had not taken place in the aisle Menards' expert identified. The location of Plaintiff's fall is material to the issue of liability and, accepting the facts in the light most favorable to Plaintiff, there is a genuine dispute as to where he fell. For this reason, the Court finds that summary judgment is not appropriate on this basis.

### b. Causation

Menards's second summary judgment argument is that Plaintiff cannot show that the transition strip was the proximate cause of his injuries. Menards reasons that Plaintiff's causation argument relies on an expert report that did not consider the conditions of the transition strip in the aisle where Plaintiff fell. In other words, Menards argues that because Plaintiff cannot prove the transition strip was dangerous, he cannot show that it caused his injuries. Plaintiff responds that he can personally describe the state of the aisle and that he does not need expert testimony to establish that the subject transition strip was dangerously maintained. (Doc. 45 at 4-6.)

Again, the Court concludes that a genuine dispute of material fact makes summary judgment inappropriate. Menards' second argument is merely an extension of its first and relies on the same assertion that Plaintiff did not measure the correct aisle. As discussed above, the exact location of Plaintiff's fall and the conditions of the transition strip in that aisle are in dispute. Those factual issues are properly decided by a fact-finder at trial. Accordingly, the Court will not grant summary judgment on this basis.

### c. Open and Obvious

Finally, Menards argues that, even if Plaintiff was injured when he tripped over a defective or dangerous transition strip, he cannot recover because that risk was open and obvious. (Doc. 38.) Store owners have no duty to warn guests about "open and obvious" dangers. *Christian*, 536 S.W.3d at 358-59 (citing *Lacy*, 199 S.W.3d at 783). A store owner is "entitled to expect that its invitees will exercise ordinary perception, intelligence and judgment, discover an obvious condition, appreciate the risk it presented, and take the minimal steps necessary to avert a tragedy." *Holzhausen v. Bi-State Dev. Agency*, 414 S.W.3d 488, 495 (Mo.

Ct. App. 2013) (citing *Harris v. Niehaus*, 857 S.W.2d 222, 226 (Mo. 1993)). "In applying the open and obvious exception to premises liability, Missouri courts require only that the dangerous condition be open and obvious so that an invitee would reasonably be expected to realize the danger associated with the condition." *Id.*

Menards' argument relies on its expert's conclusion that a store guest would be reasonably expected, through "conceptual scanning" or a "visual search," to identify the risk posed by the transition strip. (Doc. 38 at 9.) He further concluded that the color contrast between the polished cement floor and the green AstroTurf made the risks posed by the transition obvious. (*Id.*) Plaintiff responds that his vision was drawn to the ceiling by the lighting and fan display and that, in any event, the height difference between an ADA-compliant threshold (no higher than 0.5 inches) and a dangerously non-compliant threshold (which his expert determined to be .688 inches) is not open and obvious. (Doc. 45 at 6-9; Doc. 41-2 at 5; Doc. 44-6 at Figure 3A.)

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that it cannot say, as a matter of law, that the danger posed by the transition strip was open and obvious. Plaintiff is alleging that a minute difference in height—0.188 inches—transforms an otherwise safe transition strip into a dangerous tripping hazard. The Court simply cannot say that a guest "would reasonably be expected to realize the danger associated with" a 0.188-inch difference in the height of a floor-mounted rubber insert. Moreover, the Court believes that, except in the most extreme cases, the obviousness of a dangerous condition is a factual question properly reserved for the fact-finder at trial. As such, the Court does not believe summary judgment on this basis is appropriate.

Accordingly, the Court will deny Menards' motion for summary judgment.

## Conclusion

For the foregoing reasons, the Court concludes that Birnbach's expert testimony is admissible and that summary judgment is not appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Menard's Motion for Summary Judgment (Doc. 37), is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Menard's Motion to Exclude the Testimony of Plaintiff's Expert Witness Jerry Birnbach (Doc. 40), is **GRANTED in part and DENIED in part.** The Court will exclude any testimony not directly related to the ADA-compliance and general suitability of the model of transition strip used by Menards as set forth in Birnbach's first and second key finding. The Court will not allow testimony regarding the sourcing of the transition strip.


Dated this 23rd day of December, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE